UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHARLES MORGAN SIMPSON,

            Plaintiff,

-against-

6D GLOBAL TECHNOLOGIES, INC.,

           Defendant.
------------------------------------------------------------X

15 CV 3693

**COMPLAINT**

__ Civ. _____

Plaintiff, Charles Morgan Simpson ("Plaintiff" or "Morgan Simpson"), by and through his attorneys, Gusrae Kaplan Nusbaum PLLC, for his complaint against defendant 6D Global Technologies, Inc. ("6D" or the "Company"), alleges as follows:

## NATURE OF THE ACTION

1. In or around September 2014, 6D entered into a Placement Agent Agreement with Radnor Research & Trading Company, LLC ("Radnor").

2. On or about September 29, 2014, the Company filed a Form 8K with the Securities and Exchange Commission which stated, in relevant part:

> On September 29, 2014, in connection with the Exchange, the Company completed a private placement equity offering (the "Private Placement") to accredited investors (the "Purchasers"). Pursuant to the Private Placement, the Company raised $4,556,100 in gross proceeds, of which $3,562,500 was placed by the Placement Agent (as hereinafter defined) and $993,600 was a direct offering by the Company, and issued 2,201,015 shares of Common Stock to the Purchasers thereunder...In connection with the Private Placement, pursuant to a Placement Agency Agreement between the Company and Radnor Research & Trading Company, LLC (the "Placement Agent"), the Company agreed to pay the Placement Agent commissions representing 10% of the gross proceeds paid by the Purchasers introduced to the Company solely by the Placement Agent, and stock warrants to purchase an aggregate of 15% of the number of shares of Common Stock sold in the Private Placement solely introduced by the Placement Agent (the "Compensation Warrants"), at an exercise price equal to $2.21 per share.

1

3. On January 20, 2015, 6D issued a letter to Plaintiff indicating that Plaintiff has the right to 38,087 warrants to purchase 38,087 shares of 6D common stock at $2.21 per share with cashless exercise rights. A true and correct copy of the letter is attached as Exhibit "A".

4. To date, however, 6D has failed to honor its contractual obligations under the Placement Agent Agreement by, *inter alia*, not issuing the shares underlying the Compensation Warrants in a cashless exercise.

5. Defendants' failure to honor its contractual obligations relating to the cashless exercise Compensation Warrants is intentional and a contrivance to manipulate the supply and demand of the market for the Company's own purposes.

## PARTIES

6. Defendant 6D is a corporation organized under the laws of the State of Delaware. 6D's main office is located at 17 State Street, New York, New York 10004.

7. Plaintiff Morgan Simpson is domiciled and is a citizen of the State of Pennsylvania.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction over this action pursuant to § 1332(a)(2) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between a citizen of a state and a citizen or subject of a foreign state.

9. The Court has personal jurisdiction over Defendants pursuant to Section 302(a) of the New York Civil Practice Law and Rules. 6D personnel working in New York conducted all negotiations with Radnor concerning the Placement Agent Agreement.

10. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

11. On or about May 29, 2014, 6D entered into a Placement Agent Agreement whereby Radnor would be compensated for its services for serving as the Placement Agent for 6D's Private Placement Offering. A true and correct copy of the Placement Agent Agreement is attached as Exhibit "B".

12. As part of the compensation Radnor received and assigned to Plaintiff 38,037 Compensation Warrants to purchase 38,037 shares of common stock at $2.21 a share with cashless exercise provisions.

13. Page 2 paragraph 2 of the Private Placement Agreement:

> <u>Placement Agent Warrants</u>. As additional compensation for the Services, the Company shall issue to Placement Agent or its designees at the Closing, warrants (the "Placement Agent Warrants") to purchase that number of shares of Units equal to 15% of the aggregate number of shares of Units placed in the Offering to Placement Agent Investors. The Placement Agent Warrants shall be exercisable until the fifth anniversary of its issuance date at an exercise price of 32/100 dollars ($0.32) per share of Common Stock, with cashless exercise rights. (As a result of a reverse split the exercise price per share was increased to $2.21 per share).

14. Plaintiff has made numerous demands on 6D to effectuate the cashless exercise and deliver the freely trading shares without success.

15. On April 27, 2015 the closing prices of STXD (6D's) common stock was $8.55.

16. Plaintiff is entitled to damages of at least $241,476.58 ((38,087 x 8.55) – (38,087 x 2.21)).

## FIRST CAUSE OF ACTION

### Breach of Contract

17. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 16, as if set forth fully herein.

3

18. Plaintiff and Defendant entered into a binding agreement, which was the subject of valid and proper consideration.

19. Defendant breached, and continue to breach, its contractual obligations under the Placement Agent Agreement by failing to effectuate the cashless exercise of the warrants.

20. Defendant is responsible for damages arising from the failure to issue the freely trading shares underlying the 38,087 warrants to Plaintiff as contemplated by the terms of the Placement Agent Agreement.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that judgment be awarded in his favor and against Defendant as follows:

A. Damages in the amount of at least $241,476.58 plus interest accruing from April 29, 2015;

B. Costs in this action, including, without limitation the fees and expenses of counsel; and

C. Such other relief as the Court may deem just and proper.

Dated: New York, New York
May 12, 2015

Respectfully submitted,

GUSRAE KAPLAN NUSBAUM PLLC

By: _____
Martin H. Kaplan
mkaplan@gusraekaplan.com
120 Wall Street
New York, New York 10005
(212) 269-1400

*Attorneys for Plaintiff Charles Morgan Simpson*

# EXHIBIT A



**6D Global Technologies**

17 STATE STREET, SUITE 450
NEW YORK, NY 10004

Charles Morgan Simpson
4 Reynard Road
Malvern, PA 19355

January 20, 2015

RE: Warrant compensation pursuant to placement agent agreement

Dear Mr. Simpson,

This is to confirm that 6D Global Technologies, Inc. ("Company") has agreed to compensate you in your capacity as the Placement Agent in the completed private placement offering. In the offering, a total of 1,721,031 shares of our common stock was sold, as disclosed in the SEC 8-K filing made by the Company on October 1, 2014.

Pursuant to the private placement agreement and related SEC disclosure, you are entitled to receive thirty eight thousand and eighty seven (38,087) shares of our Common Stock which shall be exercisable until the fifth anniversary of its issuance date at an exercise price of $2.21 per share of Common Stock, with cashless exercise rights.

We appreciate you and your professional staff for having accomplished the successful offering. We look forward to working with you and your firm in future endeavors.

Sincerely,

*Tejune Kang*

Tejune Kang
Chief Executive Officer
6D Global Technologies, Inc.

# EXHIBIT B

RADNOR RESEARCH &
TRADING COMPANY
99 Wall Street, 12th floor
New York, New York 10005

May 29, 2014

STRICTLY CONFIDENTIAL

Tejune Kang, President
6D Acquisitions, Inc.
17 State Street, Suite 450
New York, New York 10004

Re: Placement Agent Agreement

Dear Mr. Kang:

This letter (the "Agreement") constitutes the agreement between 6D Acquisitions, Inc. (the "Company") and Radnor Research & Trading Company ("Placement Agent") that Placement Agent shall serve as the exclusive placement agent (the "Services") for the Company, on a reasonable best efforts basis, in connection with the proposed offer and sale by the Company (the "Offering") of units of the Company (the "Units"), at a price of $15,000 per Unit. Each Unit consists of fifty thousand (50,000) shares of the Company's common stock, par value of $0.001 per share (the "Common Stock"). The terms of the Offering and the Units shall be mutually agreed upon by the Company and the investors and nothing herein shall permit Placement Agent to have the power or authority to bind the Company or create an obligation of the Company to issue any Units or complete the Offering. The Company expressly acknowledges and agrees that the execution of this Agreement does not constitute a commitment by Placement Agent to purchase or sell the Units and does not ensure the successful placement of the Units or any portion thereof or the success of Placement Agent with respect to securing any other financing on behalf of the Company.

A. **Fees and Expenses**. In connection with the Services described above, the Company shall pay to Placement Agent the following compensation:

1. **Placement Agent Fee**. The Company shall pay to Placement Agent a cash placement fee (the "Placement Agent Fee") equal to 10% of the aggregate purchase price paid by the purchasers (the "Placement Agent Investors") of Units that are sold in the Offering and introduced to the Company solely by Placement Agent. The Placement Agent Fee shall be paid at the closing of the Offering (the "Closing") from the gross proceeds of the Units sold.

2. **Placement Agent Warrants**. As additional compensation for the Services, the Company shall issue to Placement Agent or its designees at the Closing, warrants (the "Placement Agent Warrants") to purchase that number of shares of Units equal to 15% of the aggregate number of shares of Units placed in the Offering to Placement Agent Investors. The Placement Agent Warrants shall be exercisable until the fifth anniversary of its issuance date at

Mr. Tejune Kang
May 23, 2014
Page 2 of 8

an exercise price of 32/100 dollars ($0.32) per share of Common Stock, with cashless exercise rights.

       3.      <u>Placement Agent Registration Rights</u>. The Placement Agent shall be entitled to "piggy-back" registration rights with respect to the Placement Agent's Warrants in connection with any registration of any shares of Common Stock of the Company.

       4.      <u>Expenses and Attorney Fees</u>. In addition to any Placement Agent Fee payable to Placement Agent hereunder, the Company hereby agrees to reimburse Placement Agent for all reasonable travel and other out-of-pocket expenses incurred in connection with any Placement Agent road show or investor meeting arranged by Placement Agent upon prior written approval by the Company.

Additionally, the Company hereby agrees to directly pay for the legal fees ($8,000) incurred by the Placement Agent in connection with the Services described above.

      B.      <u>Term and Termination of Engagement</u>. The term (the "Term") of Placement Agent's engagement will begin on the date hereof and end on the earlier of the consummation of the Offering and the date that is 5 days after the receipt by either party hereto of written notice of termination from the other party; provided, that no such notice may be given for a period of 90 days after the date hereof. Notwithstanding anything to the contrary contained herein, the provisions concerning confidentiality, indemnification, contribution and the Company's obligations to pay the Placement Agent Fee and reimburse expenses contained herein will survive any expiration or termination of this Agreement.

      C.      <u>Use of Information</u>. The Company will furnish Placement Agent such written information as Placement Agent reasonably requests in connection with the performance of its services hereunder. The Company understands, acknowledges and agrees that, in performing its services hereunder, Placement Agent will use and rely upon such information as well as other publicly available information regarding the Company and other potential parties to an Offering and that Placement Agent, absent identifying any reasonable red flags during its independent investigation of the Company, will rely on the accuracy and completeness of any information, whether publicly available or otherwise furnished to it, concerning the Company or otherwise relevant to the Offering, including, without limitation, any financial information, forecasts or projections considered by Placement Agent in connection with the provision of its services.

      D.      <u>Solicitation</u>. The Company and Placement Agent shall have the right to approve (a) every form of letter, circular, notice or other written communication (the "Information") from the Company or any other person acting on its behalf (including any other placement agent to any offeree or purchaser in connection with the offer and sale of the Securities) and (b) the persons to whom the Company and any such placement agent send any such Information. Neither the Company nor any other person acting on its behalf (including Placement Agent) will offer or sell the Securities by any form of general solicitation or general advertising, including but not limited to the methods described in Rule 502(c) under the Securities Act of 1933, as amended (the "Securities Act").

Mr. Tejune Kang
May 23, 2014
Page 3 of 8

     E.    <u>Publicity</u>. In the event of the consummation or public announcement of any Offering, Placement Agent shall have the right to disclose its participation in such Offering, including, without limitation, the placement at its cost of "tombstone" advertisements in financial and other newspapers and journals; <u>provided</u>, that the Company shall have the right to approve the content of any such tombstone prior to its disclosure to the public, such approval not to be unreasonably withheld or delayed, and such tombstone complies in all respects to the rules and regulations promulgated under the Securities Act.

     F.    <u>Securities Matters</u>. The Company shall be responsible for any and all compliance with the securities laws applicable to it, including Rule 506 of Regulation D promulgated under the Securities Act, and unless otherwise agreed in writing, all state securities ("blue sky") laws. Placement Agent agrees to reasonably cooperate with counsel to the Company in that regard.

     G.    <u>Offer and Sale</u>. Neither the Company, the Placement Agent nor any other person acting on their behalf will, directly or indirectly, take any action so as to cause the exemption afforded by Regulation D promulgated under the Securities Act to be unavailable for the offer and sale of the Common Stock.

     The Company will only accept subscriptions at the time of the sale of the Units from a purchaser that the Company and the Placement reasonably believe is an "accredited investor," as defined in Rule 501(a) of Regulation D promulgated under the Securities Act. The Company will furnish and make available to each purchaser of Units the information and provide each purchaser with the opportunity to ask questions and receive answers required by Rule 502(b) under the Securities Act. The Company shall file with the Securities and Exchange Commission (the "SEC"), not later than 15 calendar days after the first sale of the Units, a notice on Form D under the Securities Act, and shall furnish promptly to Placement Agent evidence of such required timely filing (including a copy thereof) and shall otherwise comply with the requirements of Rule 503 under the Securities Act. The Company shall be solely responsible for the contents of any disclosure documents used in the offering of the Units, and the Company represents, warrants and agrees that such documents will not, as of the date of any offer or sale of the Units, contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made therein, in light of the circumstances under which they were made, not misleading. Copies of such reports and other documents have been furnished to Placement Agent by the Company in connection with the proposed offer and sale of the Units. The Company hereby authorizes Placement Agent to use such reports and documents in connection with offers and sales of the Units.

     H.    <u>Patriot Act</u>. In accordance with the requirements of the USA Patriot Act (Title III of Pub. L 107-56), Placement Agent will obtain, verify and record information that identifies its clients, including the Company, which information may include the name and address of its clients, as well as other information that will allow Placement Agent to properly identify its clients.

     I.

3

Mr. Tejune Kang
May 23, 2014
Page 4 of 8

  J. <u>Indemnity</u>.

    1. In connection with the Company's engagement of Placement Agent as its placement agent, the Company hereby agrees to indemnify and hold harmless Placement Agent and its affiliates, and the respective controlling persons, directors, officers, shareholders, agents and employees of any of the foregoing (collectively the "Indemnified Persons"), from and against any and all claims, actions, suits, proceedings (including those of shareholders), damages, liabilities and expenses incurred by any of them (including the reasonable fees and expenses of counsel), as incurred (collectively a "Claim"), that are related to or arise out of any actions taken or omitted to be taken (including any untrue statements made or any statements omitted to be made) by the Company, and the Company shall reimburse any Indemnified Person for all expenses (including the reasonable fees and expenses of counsel) as incurred by such Indemnified Person in connection with investigating, preparing or defending any such Claim, whether or not in connection with pending or threatened litigation in which any Indemnified Person is a party. The Company will not, however, be responsible for any Claim that is finally judicially determined by a court of competent jurisdiction, and not subject to appeal, to have resulted from the gross negligence or willful misconduct of any person seeking indemnification for such Claim.

    2. The Company further agrees that it will not, without the prior written consent of Placement Agent, settle, compromise or consent to the entry of any judgment in any pending or threatened Claim in respect of which indemnification may be sought hereunder (whether or not any Indemnified Person is an actual or potential party to such Claim), unless such settlement, compromise or consent includes an unconditional, irrevocable release of each Indemnified Person from any and all liability arising out of such Claim and does not require an admission of fault by any Indemnified Person.

    3. Promptly upon receipt by an Indemnified Person of notice of any complaint or the assertion or institution of any Claim with respect to which indemnification is being sought hereunder, such Indemnified Person shall notify the Company in writing of such complaint or of such assertion or institution but failure to so notify the Company shall not relieve the Company from any obligation it may have hereunder, except and only to the extent such failure results in the forfeiture by the Company of its rights and defenses. If the Company so elects or is requested by such Indemnified Person, the Company will assume the defense of such Claim, including the employment of counsel reasonably satisfactory to such Indemnified Person and the payment of the fees and expenses of such counsel. In the event, however, that a court of competent jurisdiction to such Indemnified Person determines that having common counsel would present such counsel with a conflict of interest or if the defendant in, or target of, any such Claim, includes an Indemnified Person and the Company, and legal counsel to such Indemnified Person reasonably concludes that there may be legal defenses available to it or other Indemnified Persons different from or in addition to those available to the Company, then such Indemnified Person may employ its own separate counsel reasonably acceptable to the Company to represent or defend him, her or it in any such Claim and the Company shall pay the reasonable fees and expenses of such counsel. Notwithstanding anything herein to the contrary, if the Company fails timely or diligently to defend, contest, or otherwise protect against any Claim, the relevant

Mr. Tejune Kang
May 23, 2014
Page 5 of 8

Indemnified Person shall have the right, but not the obligation, to defend, contest, compromise, settle, assert crossclaims or counterclaims or otherwise protect against the same, and shall be fully indemnified by the Company therefor, including without limitation, for the reasonable fees and expenses of such counsel and all amounts paid as a result of such Claim or the compromise or settlement thereof. In addition, with respect to any Claim in which the Company assumes the defense, the Indemnified Person shall have the right to participate in such Claim and to retain his, her or its own counsel therefor at his, her or its own expense.

    4. The Company agrees that if any indemnity sought by an Indemnified Person hereunder is held by a court to be unavailable for any reason then (whether or not Placement Agent is the Indemnified Person), the Company and Placement Agent shall contribute to the Claim for which such indemnity is held unavailable in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and Placement Agent on the other, in connection with Placement Agent's engagement referred to above, subject to the limitation that in no event shall the amount of Placement Agent's contribution to such Claim exceed the amount of fees actually received by Placement Agent from the Company pursuant to Placement Agent's engagement. The Company hereby agrees that the relative benefits to the Company, on the one hand, and Placement Agent on the other, with respect to Placement Agent's engagement shall be deemed to be in the same proportion as (a) the total value paid or proposed to be paid or received by the Company or its shareholders as the case may be, pursuant to the Offering (whether or not consummated) for which Placement Agent is engaged to render services bears to (b) the fee paid or proposed to be paid to Placement Agent in connection with such engagement.

    5. The Company's indemnity, reimbursement and contribution obligations under this Agreement (a) shall be in addition to, and shall in no way limit or otherwise adversely affect any rights that any Indemnified Person may have at law or at equity and (b) shall be effective whether or not the Company or any Indemnified Person is at fault in any way.

    K. <u>Limitation of Engagement to the Company</u>. The Company acknowledges that Placement Agent has been retained only by the Company, that Placement Agent is providing services hereunder as an independent contractor (and not in any fiduciary or agency capacity) and that the Company's engagement of Placement Agent is not deemed to be on behalf of, and is not intended to confer rights upon, any shareholder, owner or partner of the Company or any other person not a party hereto as against Placement Agent or any of its affiliates, or any of its or their respective officers, directors, controlling persons (within the meaning of Section 15 of the Securities Act or Section 20 of the Securities Exchange Act of 1934, as amended (the "Exchange Act")), employees or agents. Unless otherwise expressly agreed in writing by Placement Agent, no one other than the Company is authorized to rely upon this Agreement or any other statements or conduct of Placement Agent, and no one other than the Company is intended to be a beneficiary of this Agreement. The Company acknowledges that any recommendation or advice, written or oral, given by Placement Agent to the Company in connection with Placement Agent's engagement is intended solely for the benefit and use of the Company's management and directors in considering a possible Offering, and any such recommendation or advice is not on behalf of, and shall not confer any rights or remedies upon, any other person or be used or relied upon for any other purpose. Placement Agent shall not have the authority to make any

Mr. Tejune Kang
May 23, 2014
Page 6 of 8

commitment binding on the Company. The Company, in its sole discretion, shall have the right to reject any Placement Agent Investor. The Company agrees that it will perform and comply with the covenants and other obligations set forth in the subscription agreement and related transaction documents between the Company and the investors in the Offering, and that Placement Agent will be entitled to rely on the representations, warranties, agreements and covenants of the Company, or of any purchaser of securities to the Company, contained in such subscription agreement and related transaction documents as if such representations, warranties, agreements and covenants were made directly to Placement Agent by the Company.

L.  **Opinions to Purchaser.** The Company agrees that upon any sale of the Units it will deliver or cause to be delivered to Placement Agent, and upon which Placement Agent may expressly rely, an opinion or opinions from Company counsel, any letter or letters of accountants and any certificates of officers of the Company, that are delivered to any purchaser. Any document referred to in this paragraph that is provided to any purchaser or purchasers of the Units shall also be addressed to Placement Agent, as Placement Agent, or shall state that Placement Agent shall be entitled to rely upon such document to the same extent as if it had been addressed to Placement Agent.

M.  **Limitation of Placement Agent's Liability to the Company.** Placement Agent and the Company further agree that neither Placement Agent nor any of its affiliates or any of its or their respective officers, directors, controlling persons (within the meaning of Section 15 of the Securities Act or Section 20 of the Exchange Act), employees or agents shall have any liability to the Company, its security holders or creditors, or any person asserting claims on behalf of or in the right of the Company (whether direct or indirect, in contract, tort, for an act of negligence or otherwise) for any losses, fees, damages, liabilities, costs, expenses or equitable relief arising out of the Services rendered hereunder, except for losses, fees, damages, liabilities, costs or expenses that arise out of or are based on any action of or failure to act by Placement Agent and that are finally judicially determined, and not subject to appeal, to have resulted solely from the gross negligence or willful misconduct of Placement Agent.

N.  **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Nevada applicable to agreements made and to be fully performed therein, without giving effect to principles of conflicts of laws. Any disputes that arise under this Agreement, even after the termination of this Agreement, will be heard only in the state or federal courts located in the County of Clark, State of Nevada. The parties hereto expressly agree to submit themselves to the jurisdiction of the foregoing courts in the County of Clark, State of Nevada. The parties hereto expressly waive any rights they may have to contest the jurisdiction, venue or authority of any court sitting in the County of Clark, State of Nevada. In the event of the bringing of any action, or suit by a party hereto against the other party hereto, arising out of or relating to this Agreement, the party in whose favor the final judgment or award shall be entered shall be entitled to have and recover from the other party the costs and expenses incurred in connection therewith, including its reasonable attorneys' fees. Any rights to trial by jury with respect to any such action, proceeding or suit are hereby waived by Placement Agent and the Company.

Mr. Tejune Kang
May 23, 2014
Page 7 of 8

    O. <u>Notices</u>. All notices hereunder will be in writing and sent by certified mail, hand delivery or overnight delivery, if sent to the Company, to the address on the first page hereof, Attention: President. Notices sent by certified mail shall be deemed received five days thereafter, and notices sent by hand delivery or overnight delivery shall be deemed received on the date of the relevant written record of receipt.

    P. <u>Miscellaneous</u>. The Company represents that it is free to enter into this Agreement and the transactions contemplated hereby, that it will act in good faith and that it will not hinder Placement Agent's efforts hereunder. Placement Agent represents that it is free to enter into this Agreement and the transactions contemplated hereby, that it will act in good faith and that it will not hinder the Company's efforts hereunder. This Agreement shall not be modified or amended except in writing signed by Placement Agent and the Company. This Agreement shall be binding upon and inure to the benefit of Placement Agent and the Company and their respective assigns, successors and legal representatives. This Agreement constitutes the entire agreement of Placement Agent and the Company, and supersedes any prior agreements, with respect to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect such provision in any other respect and the remainder of the Agreement shall remain in full force and effect. This Agreement may be executed in counterparts (including facsimile or PDF counterparts), each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

    In acknowledgment that the foregoing correctly sets forth the understanding reached by Placement Agent and the Company, please sign in the space provided below, whereupon this letter shall constitute a binding Agreement as of the date indicated above.

    [Remainder of this page intentionally left blank]

Mr. Tejune Kang
May 23, 2014
Page 8 of 8

                                              Very Truly Yours,

                                              RADNOR RESEARCH &
                                              TRADING COMPANY

                                              By: _____
                                                  Claudette Burgess Gay
                                                  Chief Compliance Officer

Accepted and Agreed:

6D Acquisitions, Inc.


_____
Tejune Kang
President